**Michael Dwayne EDWARDS**

v.

**STATE of Tennessee, Wayne Brandon, Warden.**

Supreme Court of Tennessee, at Nashville.

Oct. 3, 2007 Session.

Sept. 18, 2008.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; and Leslie E. Price, Assistant Attorney General, for the Appellant, State of Tennessee, Wayne Brandon, Warden.

Dana Dye, Centerville, Tennessee, for the Appellee, Michael Dwayne Edwards.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined. GARY R. WADE, J., filed a dissenting opinion, in which JANICE M. HOLDER, J., joined.

We granted the State's application for permission to appeal to consider whether the Court of Criminal Appeals erred in remanding this habeas corpus case to the trial court for a hearing on Michael Dwayne Edward's claim that his sentence is illegal. After careful consideration we conclude that, even assuming the trial court erroneously classified Edwards as a persistent offender for sentencing, this non-jurisdictional error renders the judgment voidable, not void, and does not entitle Edwards to habeas corpus relief. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court dismissing the habeas corpus petition.

## I.  BACKGROUND

On January 24, 1998, Edwards participated in a burglary of a car dealership in Henry County. On November 4, 1998, a jury convicted Edwards of the offense. On December 9, 1998, the trial court sentenced Edwards on the burglary convic-

tion, classifying him as a persistent offender and imposing a Range III, nine-year sentence. Edwards appealed, raising a single issue, the sufficiency of the evidence to support his conviction. The Court of Criminal Appeals affirmed his conviction, and this Court denied his application for permission to appeal. *See State v. Edwards*, No. W1999–00591–CCA–R3–CD, 2000 WL 674671 (Tenn.Crim.App. May 16, 2000), *perm. app. denied* (Tenn. Dec. 4, 2000).[1]

On March 22, 2006, almost six years after the conclusion of his appeal as of right, Edwards filed a habeas corpus petition in Hickman County, where he was incarcerated,[2] challenging the judgment classifying him as a persistent offender. Edwards argued that, at the time of sentencing, he lacked the five prior convictions necessary to support the persistent offender classification. According to Edwards, one of the convictions used to support the classification, felony evading arrest, occurred after the burglary and did not qualify as a "prior conviction" for purposes of the persistent offender statute. As a result, Edwards argued, the trial court lacked jurisdiction and authority to classify him as a persistent offender.

In order to substantiate his claim, Edwards attached several documents to his petition, including the State's notice of sentencing status, on which the following handwritten notation appears: "Henry County Circuit Court–Minutes/entries Judge's Docket Book Docket No. 12756 Evading (F/E) 9/30/98." Edwards also attached copies of five judgments of convic-

---

1. A detailed recitation of the facts underlying Edwards' burglary conviction, while not relevant to the issue in this habeas corpus appeal, appears in the decision of the Court of Criminal Appeals.

2. *See* Tenn.Code Ann. § 29–21–105 (2000) (providing that petitions seeking habeas corpus relief "should be made to the court or judge most convenient in point of distance to the applicant.").

tion, including a copy of the judgment on the felony evading arrest conviction, which listed the offense date as May 19, 1998, five months after the burglary was committed. Edwards did not attach a transcript of the sentencing hearing.

The following statutory provisions place Edwards' habeas corpus claim in context. "A 'persistent offender' is a defendant who has received: (1)[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes where applicable." Tenn.Code Ann. § 40–35–107(a) (2006).[3] For purposes of the persistent offender statute, " 'prior conviction' means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced." Tenn.Code Ann. § 40–35–107(b)(1) (2006); *see also State v. Blouvett,* 904 S.W.2d 111, 113 (Tenn.1995) (construing the statutory term "prior conviction" to mean "a conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed"). Persistent offenders receive Range III sentences. Tenn.Code Ann. § 40–35–107(c) (2006). Sentences in Range III carry higher criminal penalties and require offenders to serve a greater portion of the sentence before becoming eligible for release. Tenn.Code Ann. § 40–35–107 (2006), Sentencing Comm'n cmts; *see* Tenn.Code Ann. § 40–35–501(e) (2006). The punishment range for burglary, a Class D felony, is between two and twelve years, with sentences in Range III from eight to twelve years. Tenn.Code Ann. § 39–14–402(c) (2006) (stating that burglary is a Class D felony); Tenn.Code Ann. § 40–35–112(c)(4) (2006) (providing Range III sentence for Class D felonies).

"The finding that a defendant is or is not a persistent offender is appealable by either party." Tenn.Code Ann. § 40–35–107(d) (2006).

The State moved to dismiss Edwards' habeas corpus petition, asserting that neither the petition nor the attachments established that the evading arrest conviction actually served as a basis for Edwards' persistent offender classification. The State also maintained that, even if true, Edwards' assertions failed to establish grounds for habeas corpus relief. Thereafter, the trial court summarily dismissed the petition, concluding without additional comment, that the petition failed to establish grounds for habeas corpus relief.

Edwards appealed. The Court of Criminal Appeals reversed and remanded to the trial court for the appointment of counsel and for an "evidentiary hearing." In so doing, the Court of Criminal Appeals stated that it could not "ascertain ... whether the convicting court relied upon the evading arrest conviction in arriving at the range determination, whether there were other prior felonies considered[,] or whether the petitioner agreed to be sentenced outside the range." The Court of Criminal Appeals instructed the Hickman County habeas corpus court to determine on remand "whether the petitioner's range classification was improper" and to remand the case to the convicting court in Henry County "for appropriate sentencing" if it concluded that "the sentence imposed was illegal."

The State filed a petition for rehearing in the Court of Criminal Appeals, arguing that the trial court properly dismissed the habeas corpus petition because, "even if

---

**3.** The relevant portions of the sentencing statutes cited in this opinion have not changed since Edwards' sentencing hearing; thus, this opinion refers to the current version of these statutes.

true, the illegal range determination would render the petitioner's sentence merely voidable, not void." The State relied upon *McConnell v. State*, 12 S.W.3d 795 (Tenn. 2000), for the proposition that non-jurisdictional errors in offender classification do not result in an illegal sentence or provide grounds for habeas corpus relief. The Court of Criminal Appeals acknowledged that, under *McConnell*, "offender classification can be the subject of plea negotiations and agreed to by a defendant provided that the sentence imposed is within the statutory authority of the sentencing act." However, the Court of Criminal Appeals limited the reasoning of *McConnell* to plea-bargained sentences, emphasizing that "[u]nlike the situation described in *McConnell*, the challenged judgment in this case resulted from a sentence imposed by the trial court after a jury conviction." Citing *McLaney v. Bell*, 59 S.W.3d 90, 92–95 (Tenn.2001), the Court of Criminal Appeals also denied the State's request for clarification of the remand for an "evidentiary hearing." Thus, the Court of Criminal Appeals denied rehearing.

Thereafter, the State filed an application for permission to appeal, which we granted.[4] Having fully considered the record and the relevant authorities, we conclude that, taken as true, Edwards' assertions do not establish grounds for habeas corpus relief.

## II. STANDARD OF REVIEW

■ Whether habeas corpus relief should be granted is a question of law. Thus, we apply de novo review and afford no presumption of correctness to the findings and conclusions of the courts below. *Summers v. State*, 212 S.W.3d 251, 255 (Tenn.2007); *Hogan v. Mills*, 168 S.W.3d 753, 755 (Tenn.2005).

## III. ANALYSIS

The right to seek habeas corpus relief is guaranteed by article I, section 15 of the Tennessee Constitution, which declares that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it." Tenn. Const. art. I, § 15. Furthermore habeas corpus procedure in Tennessee has been regulated by statute since the mid-nineteenth century. *See* Code of Tennessee §§ 3720 to 3765 (Return J. Meigs & William F. Cooper eds., E.G. Easterman & Co. 1858); *Summers*, 212 S.W.3d at 255; *State v. Ritchie*, 20 S.W.3d 624, 629 (Tenn.2000). While the statutory language[5] describing the writ appears broad, in fact, "'[h]abeas corpus under Tennessee law has always been, and remains, a very narrow procedure.'" *Archer v. State*, 851 S.W.2d 157, 162 (Tenn. 1993) (quoting *Luttrell v. State*, 644 S.W.2d 408, 409 (Tenn.Crim.App.1982)). Indeed, recognizing the limited nature of Tennes-

4. After granting the State's application, we became concerned that the appeal had been rendered moot by the passage of time. We raised this issue at oral argument and thereafter permitted the State to supplement the record on appeal with certain post-judgment facts. We also allowed the parties to file supplemental briefs addressing the mootness issue in light of these post-judgment facts. Upon further consideration, we decline to base our decision on this ground. Edwards' sentence clearly had not expired at the time he filed his habeas corpus petition in March

2006. In an affidavit filed by the State, a Department of Correction employee states that Edwards' burglary sentence expired on August 9, 2007.

5. *See* Tenn.Code Ann. § 29–21–101 (2000) ("Any person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases specified in § 29–21–102, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint.").

see's habeas corpus procedure, the Legislature enacted the Post–Conviction Procedure Act to provide a collateral procedure that allows state courts to consider and to remedy a broader range of claims. *See* Tenn.Code Ann. §§ 40–30–101 to –122 (2006); *Hickman v. State,* 153 S.W.3d 16, 20 (Tenn.2004); *Luttrell,* 644 S.W.2d at 409.

Moreover, this Court has repeatedly emphasized the limited scope of the remedy afforded by habeas corpus proceedings. *See, e.g., May v. Carlton,* 245 S.W.3d 340, 344 (Tenn.2008); *Faulkner v. State,* 226 S.W.3d 358, 361 (Tenn.2007); *Hickman,* 153 S.W.3d at 20. It is well-settled that "a petition for writ of habeas corpus may not be used to review or correct errors of law or fact committed by a court in the exercise of its jurisdiction." *State ex rel. Holbrook v. Bomar,* 211 Tenn. 243, 246, 364 S.W.2d 887, 888 (1963). Furthermore, "the writ of habeas corpus cannot be used to serve the purpose of an appeal or writ of error." *Id.* Rather, habeas corpus relief is available "only when 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." *Archer,* 851 S.W.2d at 164 (quoting *State v. Galloway,* 45 Tenn. (5 Cold.) 326, 336–37 (1868)). "'When the restraint, from which relief is sought by a writ of *habeas corpus,* proceeds from a judgment erroneous but not void, the writ will not lie. Nor, under it, can the party impeach a judgment as contrary to the facts.'" *Archer,* 851 S.W.2d at 161 (quoting *State ex rel. Karr v. Taxing Dist. of Shelby County,* 84 Tenn. 240, 249 (1886)). "'But where the sentence is void, not merely voidable, or the term of imprisonment under it has expired, relief

may be had by the writ.'" *Id.* Stated differently, a successful habeas corpus petitioner must demonstrate that the challenged judgment is "void" and not merely "voidable." *May,* 245 S.W.3d at 344; *Faulkner,* 226 S.W.3d at 361; *Summers,* 212 S.W.3d at 255; *Taylor v. State,* 995 S.W.2d 78, 83 (Tenn.1999); *Archer,* 851 S.W.2d at 164; *Potts v. State,* 833 S.W.2d 60, 62 (Tenn.1992).

The determinative issue, then, in every habeas corpus proceeding is whether the challenged judgment is void. Not surprisingly, this Court has often attempted to define and to describe void judgments and to distinguish them from voidable judgments. We have described a voidable judgment as "facially valid [requiring] proof beyond the face of the record or judgment to establish its invalidity." *Summers,* 212 S.W.3d at 256 (citing *Dykes v. Compton,* 978 S.W.2d 528, 529 (Tenn. 1998)). In contrast, we have explained that

> "[a] void judgment is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment, which want of jurisdiction may be either of the person, or of the subject-matter generally, or of the particular question attempted to be decided or the relief assumed to be given."

*Lynch v. State ex rel. Killebrew,* 179 Tenn. 339, 166 S.W.2d 397, 398 (1942) (quoting *New York Cas. Co. v. Lawson,* 160 Tenn. 329, 336, 24 S.W.2d 881, 883 (1930)). We have explained that the question of whether a judgment is void "is always one of jurisdiction, that is, whether the order, judgment or process under attack comes within the lawful authority of the court or judge rendering or issuing it." *State ex rel. Anglin v. Mitchell,* 575 S.W.2d 284, 287 (Tenn.1979) *overruled on other grounds by Archer,* 851 S.W.2d at 162–164. Thus, for purposes of habeas corpus pro-

ceedings, the term "jurisdiction" is synonymous with the term "authority." *See, e.g., Lynch,* 166 S.W.2d at 398–99 ("But here the Court was without authority to punish by confinement in the training school for any period, and [it], therefore exceeded [it's] jurisdictional authority.").

These decisions defining void judgments recognize that the setting of punishment for criminal offenses is a legislative function. *See Lavon v. State,* 586 S.W.2d 112, 115 (Tenn.1979); *Sandford v. Pearson,* 190 Tenn. 652, 661, 231 S.W.2d 336, 339 (1950). Statutes prescribing and defining available punishments both confer and limit the jurisdiction of trial courts to impose sentences for criminal offenses. *See Smith v. Lewis,* 202 S.W.3d 124, 127–28 (Tenn.2006); *McConnell,* 12 S.W.3d at 798. Thus, as we have previously held, trial courts lack jurisdiction to impose sentences in direct contravention of a governing sentencing statute. Similarly, trial courts lack jurisdiction to impose sentences not available under the sentencing statutes governing the case. Such sentences are illegal, amounting to "jurisdictional defect[s]" [6] that render the judgments imposing them void and subject to attack in a habeas corpus proceeding. *See, e.g., May,* 245 S.W.3d at 340 (granting habeas corpus relief where the judgment included a declaration of infamy for a crime not declared infamous by the statutes in effect when the offense was committed and the sentence imposed); *Smith,* 202 S.W.3d at 127–28 (holding a judgment void because it included a release eligibility percentage in clear contravention of a statute requiring child rapists to serve their entire sentences); *Stephenson v. Carlton,* 28 S.W.3d 910, 912 (Tenn.2000)

(granting habeas corpus relief where the judgment included an "illegal and void" sentence of life imprisonment without the possibility of parole which was not available under the statute in effect at the time the defendant committed the offense); *Archer,* 851 S.W.2d at 163 (describing the judgment in *Henderson v. State ex rel. Lance,* 220 Tenn. 520, 419 S.W.2d 176 (1967) as "facially void" and stating that the trial court was "without jurisdiction or authority to enter judgment against Lance with a provision for concurrent sentencing" because a statute mandated consecutive sentencing); *State v. Burkhart,* 566 S.W.2d 871, 873 (Tenn.1978) (describing as illegal and a "nullity" a judgment which imposed concurrent sentences in "direct contravention" of a statute requiring consecutive sentences); *Lynch,* 166 S.W.2d at 398 (holding a judgment "void" and stating that the trial court acted "beyond [its] jurisdiction" in sentencing a minor to the "State Training and Agricultural School for one year," when the relevant statute only authorized sentencing to the "workhouse or jail").

Our prior decisions also illustrate that the availability of habeas corpus relief is not dependent upon the manner of imposition of the sentence. In other words, habeas corpus relief is available whether the trial court imposed the illegal sentence after a jury trial or the parties agreed to the illegal sentence in plea negotiation. This is true because a guilty plea waives only non-jurisdictional defects. *See State v. McKinney,* 74 S.W.3d 291, 306 (Tenn.2002); *State v. Pettus,* 986 S.W.2d 540, 542 (Tenn.1999). A guilty plea does not waive the jurisdictional defects that constitute grounds for habeas

---

6. *McLaney,* 59 S.W.3d at 93 (*overruled on other grounds by Summers,* 212 S.W.3d at 254); *Coleman v. Morgan,* 159 S.W.3d 887, 892 (Tenn.Crim.App.2004) (quoting and applying *McLaney*'s "jurisdictional defect" definition); *McChristian v. State,* 159 S.W.3d 608, 610 (Tenn.Crim.App.2004).

corpus relief, nor does a guilty plea confer jurisdiction upon the trial court to impose a sentence not available under governing statutes. *See, e.g., Hoover v. State,* 215 S.W.3d 776, 780 n. 4 (Tenn.2007) (cautioning "that the State may not confer through plea negotiations release eligibility for criminal offenses that are statutorily ineligible for early release"); *Summers,* 212 S.W.3d at 258 ("A court lacks jurisdiction to impose an agreed sentence that is illegal, even an illegally lenient one."); *Smith,* 202 S.W.3d at 128 (holding a plea-bargained sentence illegal because it contravened a statute that expressly prohibited early release eligibility for the plea offense); *Carlton,* 28 S.W.3d at 912 (stating that "the parties cannot by agreement salvage an illegal sentence or otherwise create authority for the imposition of a sentence that has not been authorized by statute"). Thus, habeas corpus relief is available to remedy truly illegal sentences whether a trial court imposed the illegal sentence after a jury trial or the parties agreed to it in plea negotiations. *Id.*

The distinction lies not in the availability of relief but in the scope of the remedy habeas corpus affords. For example, where a trial court imposes an illegal sentence after a jury trial, the illegal sentence may be corrected in a habeas corpus proceeding, but the conviction will remain intact. *See Smith,* 202 S.W.3d at 130 (explaining that even though this Court granted relief for an illegal sentence in *Carlton,* 28 S.W.3d at 912, the first-degree murder conviction remained intact); *see also State v. Stephenson,* 195 S.W.3d 574, 593 (Tenn.2006) (noting that, although the habeas corpus court on remand in *Carlton* entered a final judgment declaring the defendant's sentence null and void, the defendant's first degree murder conviction "remained valid and in effect"). Similarly, where an illegal sentence is imposed pursuant to a plea agreement but is not a material (bargained-for) element of the agreement, the illegal sentence may be corrected in habeas corpus, but the conviction will remain intact. *See Smith,* 202 S.W.3d at 128–130. However, where an illegal sentence is imposed as a material element of a plea agreement, "the illegal sentence renders the guilty plea, including the conviction, invalid." *Summers,* 212 S.W.3d at 259.

As the State points out, this Court has never indicated that plea agreements may include illegal sentences. To the contrary, *Burkhart,* one of the leading cases on the subject of illegal sentences, involved a plea-bargained sentence. Burkhart pleaded guilty to escape and received a concurrent sentence even though a statute required consecutive sentencing. When the Department of Correction notified Burkhart he would be required to serve his escape sentence consecutively, he filed a petition seeking relief. This Court granted relief, concluding that the concurrent sentence was imposed "in direct contravention of the express [statutory] provisions" and describing it as "a nullity," and an "illegal, as opposed to a merely erroneous, sentence." *Burkhart,* 566 S.W.2d at 873.

More relevant to the present appeal is the subsequent decision of *State v. Mahler,* 735 S.W.2d 226 (Tenn.1987), in which the defendant pleaded guilty to second degree murder in exchange for a multiple offender classification and a fifty-year Range II sentence. As in this case, Mahler argued that he lacked the prior convictions necessary to support the multiple offender classification. This Court reaffirmed *Burkhart,* emphasizing that a "judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal." *Id.* at 228 (citing *Burkhart,* 566 S.W.2d at 873). However, we denied Mahler relief, explaining that, even if his offender classi-

fication was erroneous, his sentence was not illegal because it fell within the applicable statutory range of punishment for second degree murder—ten years to life imprisonment. *Mahler*, 735 S.W.2d at 228. We also noted that Mahler waived any non-jurisdictional errors, such as offender classification, by pleading guilty. *Id.* Later, in *Hicks v. State*, 945 S.W.2d 706, 706 (Tenn.1997), we rejected a post-conviction challenge to a "plea bargained Range II sentence" that had been "coupled with Range I release eligibility." In doing so, we reiterated "that a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Id.* at 709.

More recently in *McConnell*, we considered a post-conviction challenge to the legality of a guilty plea that had been structured pursuant to the Criminal Sentencing Reform Act of 1982, even though the plea offense had been committed after the Criminal Sentencing Reform Act of 1989 became effective. 12 S.W.3d at 797. We reaffirmed the principle that offender classification and release eligibility may be "subjects of plea bargain negotiations," emphasizing that "these elements of plea bargaining have been and still are properly characterized as non-jurisdictional." *Id.* at 798. However, we held the judgment in *McConnell* void because the plea-bargained sentence had been structured pursuant to a statute that was not in effect when McConnell committed the offense. *Id.* at 800. We held that such a jurisdictional defect could not be waived by a plea agreement, explaining:

> While it is true that a plea bargain agreement is contractual, contract principles extend only so far. The 1989 Act establishes the outer limits within which the State and a defendant are free to negotiate, and the courts are bound to respect those limits. If we accepted the State's argument that the 1989 Act is

not jurisdictional, we could easily be left with the logical corollary to the matter before us: a plea bargained sentence *less* than the statutory minimum. Sentences beneath the minimum provided for by statute, however, have been consistently rejected as illegal. Yet the reasoning advanced by the State would permit this very result and would be an expansion of the trial court's jurisdiction by this Court. Such an expansion would be an obvious and impermissible intrusion on the clear Constitutional prerogative of the Legislature to define the contours of a trial court's jurisdiction.

*Id.* at 799 (citations and footnotes omitted).

In *Hoover*, the most recent decision addressing the nature of offender range classifications, we denied habeas corpus relief, stating:

> While Hoover's plea-bargained thirty-five-year sentence is outside the parameters of Range I offenders, the plea-bargained sentence is well within the overall punishment range authorized for Class A felony offenses, such as second degree murder. A review of this Court's decisions establishes that it is this latter range—the overall punishment range authorized for the plea offense—that controls the determination of whether an agreed sentence is legal.

215 S.W.3d at 779. Because Hoover's sentence did not exceed the maximum punishment statutorily authorized for the plea offense of second degree murder, we refused to grant habeas corpus relief. We "reiterate[d] that offender classification and release eligibility are *non-jurisdictional*" and that Hoover's guilty plea "waived any irregularity concerning his offender classification." *Id.* at 780–81 (emphasis added).

From the preceding discussion of our prior decisions, the following controlling

principles emerge. Habeas corpus may not be used as a substitute for appeal. Rather, habeas corpus relief is limited to remedying jurisdictional defects that are apparent on the face of the judgment or the record of the proceedings on which the judgment is rendered. For purposes of habeas corpus challenges to sentencing, jurisdictional defect means either a sentence that directly contravenes a governing statute or a sentence that was not available under governing statutes. However, habeas corpus relief is not available to remedy non-jurisdictional errors, i.e., factual or legal errors a court makes in the exercise of its jurisdiction. While the scope of the remedy differs as previously explained herein, the availability of habeas corpus relief does not depend upon whether the trial court imposed an illegal sentence after a jury conviction or the parties agreed to an illegal sentence as part of a plea agreement. Guilty pleas waive only non-jurisdictional errors. Guilty pleas do not waive the jurisdictional defects that constitute grounds for habeas corpus relief, nor do guilty pleas confer jurisdiction upon a trial court to impose an illegal sentence. However, offender classification is a non-jurisdictional element of sentencing. Thus, errors and/or irregularities in offender classification are waived by a guilty plea, and are not grounds for habeas corpus relief if the sentence is imposed by a trial court after a jury conviction. Simply stated, habeas corpus relief is not available to correct errors or irregularities in offender classification. Rather, relief for such non-jurisdictional errors must be obtained, if at all, in a timely filed appeal as of right or in a timely filed petition seeking post-conviction relief.

Applying these principles to the facts of this case, we conclude that the trial court properly dismissed Edwards' habeas corpus petition. While Edwards alleges that the trial court erred by classifying him as a persistent offender, Edwards does not dispute that the persistent offender classification was available under the statutes governing his sentencing. Cf. *May*, 245 S.W.3d at 340 (granting habeas corpus relief where the judgment included a declaration of infamy for a crime not declared infamous by the statutes in effect when the offense was committed); *Carlton*, 28 S.W.3d at 912 (granting habeas corpus relief where the judgment imposed a sentence not available under the statutes in effect when the offense was committed). Furthermore, Edwards does not and cannot assert that his nine-year sentence exceeds the statutory maximum available for persons convicted of the Class D felony of burglary. As previously stated, burglary carries a two-to-twelve-year statutory sentencing range. Cf. *Hoover*, 215 S.W.3d at 779 (holding the sentence legal because it did not exceed the overall punishment range authorized for the plea offense); *Mahler*, 735 S.W.2d at 228 (holding the sentence legal because it fell within the statutory range of punishment for second degree murder applicable at the time the offense was committed). Edwards' assertions amount to no more than a claim that the trial court erred in exercising the jurisdiction it clearly possessed under the governing sentencing statutes. Admittedly, Edwards may have obtained relief on his claim that the trial court erred had he exercised his statutory right and challenged the propriety of his persistent offender classification in an appeal as of right.[7] Additionally, Edwards could have raised this issue in support of a claim of ineffective assistance of counsel in a timely filed petition for post-conviction relief.

---

7. "The finding that a defendant is or is not a persistent offender is appealable by either party." Tenn.Code Ann. § 40–35–107(d) (2006).

However, Edwards is not entitled to habeas corpus relief on this claim, which, at most, renders his judgment voidable and not void. Thus, we hold that, taken as true, the allegations of Edwards' habeas corpus petition do not establish grounds for habeas corpus relief. Furthermore, we note that our holding is consistent with several decisions of the Court of Criminal Appeals affirming summary dismissal of habeas corpus petitions alleging similar claims.[8]

As a result of our holding, we need not address the State's arguments that the Court of Criminal Appeals erred 1) in determining that Edwards provided an adequate record to avoid summary dismissal and 2) by remanding to the trial court for the appointment of counsel and for an "evidentiary hearing" on Edwards' claim. However, we note that *Summers v. State*, 212 S.W.3d 251, which addresses both of these issues, was released twelve days after the Court of Criminal Appeals' decision in this appeal.

## IV. CONCLUSION

Taken as true, the allegations of Edwards' habeas corpus petition and of the attached documents fail to establish that the judgment classifying him as a persistent offender and imposing a nine-year,

---

8. *See, e.g., Vick v. State*, No. W2006–02172–CCA–R3–HC, 2008 WL 80580 (Tenn.Crim. App. Jan. 8, 2008) (describing petitioner's challenge to his multiple offender classification as not cognizable in a habeas corpus proceeding); *Higgs v. State*, No. E2005–02712–CCA–R3–HC, 2006 WL 3628074 (Tenn.Crim.App. Dec. 14, 2006), *perm. app. denied* (Tenn. Mar. 12, 2007) (affirming summary dismissal of Higgs' petition challenging his persistent offender classification on the grounds that he lacked the requisite number of prior convictions to qualify as a persistent offender); *Anderson v. Bell*, No. M2006–01223–CCA–R3–HC, 2006 WL 3290826 (Tenn.Crim.App. Nov. 13, 2006), *perm. app. denied* (Tenn. Jan. 29, 2007) (affirming summary dismissal and stating that the petitioner's challenge to his career offender classification would at most render his twelve-year sentences voidable, not void); *Carson v. Mills*, No. W2005–00745–CCA–R3–HC, 2006 WL 16306, at *5 (Tenn.Crim.App. Jan. 4, 2006) (holding that any error in classifying the petitioner for sentencing purposes would render the resulting judgments merely voidable, not void, and not subject to attack in habeas corpus); *Moore v. Turner*, No. W2005–01995–CCA–R3–HC, 2006 WL 473725 (Tenn.Crim. App. Feb. 28, 2006) (affirming summary dismissal and stating that the petitioner's challenge to his career offender classification would render his thirty-year sentence voidable, not void); *Spooner v. State*, No. E2004–02160–CCA–R3–HC, 2005 WL 1584357 (Tenn.Crim.App. July 7, 2005), *perm. app. denied* (Tenn. Dec. 5, 2005) (affirming summary dismissal of a habeas corpus petition and stating that Petitioner's claim that he lacked the requisite number of prior convictions to support his multiple offender classification would render the judgment voidable, not void); *Lewis v. Parker*, No. W2004–00465–CCA–R3–HC, 2004 WL 3021127 (Tenn.Crim. App., Dec. 30, 2004) (opining that an erroneous determination that petitioner's prior record of convictions qualified him for sentencing as a career offender neither results in a void judgment nor establishes that the trial court lacked jurisdiction to sentence the petitioner); *Collins v. State*, No. 03C01–9805–CR–00192, 1999 WL 544658 (Tenn.Crim.App. July 28, 1999), *perm. app. denied* (Tenn. Nov. 22, 1999) (stating that a challenge to the legality of a Range II multiple offender sentence is not cognizable in a habeas corpus proceeding); *French v. Bell*, No. 01C01–9801–CR–00022, 1999 WL 8277 (Tenn.Crim. App. Jan. 12, 1999), *perm. app. denied* (Tenn. Jun. 21, 1999) (affirming summary dismissal of a habeas corpus petition alleging that the sentencing court lacked authority to classify and sentence the petitioner as a persistent offender because the petitioner lacked the requisite number of prior felony convictions to support the classification); *Mathews v. Raney*, No. 02C01–9512–CC–00366, 1997 WL 206771 (Tenn.Crim.App. Apr. 28, 1997), *perm. app. denied* (Tenn. July 7, 1997) (affirming summary dismissal of a habeas corpus petition alleging that the trial court erroneously classified the petitioner as a persistent offender).

Range III sentence is void. Thus, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court summarily dismissing Edwards' petition.

Pursuant to Tennessee Code Annotated section 40–14–207(a) (2006), attorneys appointed to represent indigent defendants are entitled to reasonable compensation for their services on appeal. Pursuant to Tennessee Supreme Court Rule 13(e)(1), for the purposes of seeking compensation, this case is declared to be complex and extended because it involved novel and complex legal issues and because counsel was required, at the request of the Court, to seek and obtain supplementary information not usually required to be obtained at this stage of the proceedings.

It appearing Edwards is indigent, costs of this appeal shall be taxed to the State, for which execution may issue if necessary.

GARY R. WADE, J., filed a dissenting opinion, in which JANICE M. HOLDER, J., joined.

GARY R. WADE, J., with whom JANICE M. HOLDER, J., joins, dissenting.

I would affirm the judgment of the Court of Criminal Appeals, and must, therefore, respectfully dissent from the majority's conclusion that the Petitioner has failed to establish grounds for habeas corpus relief. Although the majority has performed an admirable analysis of the present cases on the subject, I am of the opinion that the various principles derived from these opinions are in conflict and, absent a reconciliation, the Petitioner is entitled to relief. Because the record of the proceedings demonstrates that after the jury verdict, the trial court directly contravened statute by imposing a Range III, persistent offender sentence, I would grant habeas corpus relief and remand to

the sentencing court for the imposition of a Range II sentence.

## I.

Although habeas corpus is addressed by our federal and state constitutions, the issuance of the writ has been regulated by statute for well over one hundred years. *State v. Ritchie,* 20 S.W.3d 624, 629 (Tenn. 2000); *Ussery v. Avery,* 222 Tenn. 50, 432 S.W.2d 656, 657 (1968). The grounds for habeas corpus relief in Tennessee appear to be broad: "Any person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases specified in § 29–21–102, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint." Tenn. Code Ann. § 29–21–101 (2000). Our case law has interpreted the statutory terminology, and we recently defined imprisonment and restraint:

> To obtain habeas corpus relief, a petitioner must be "imprisoned or restrained of liberty." "Imprisoned" refers to actual physical confinement or detention. "Restrained of liberty" is a broader term and encompasses situations beyond actual physical custody. However, a petitioner is not restrained of liberty unless the challenged judgment itself imposes a restraint on the petitioner's freedom of action or movement.

*Summers v. State,* 212 S.W.3d 251, 257 (Tenn.2007) (citations omitted); *see also May v. Carlton,* 245 S.W.3d 340, 346 (Tenn.2008).

In practice, however, the grounds upon which habeas corpus relief may be granted are limited. *See Hickman v. State,* 153 S.W.3d 16, 20 (Tenn.2004). Unlike a post-conviction petition, for example, which may afford relief from a voidable judgment, the purpose of a state habeas corpus petition

is to contest a void judgment. *Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn.2007); *State ex rel. Newsom v. Henderson*, 221 Tenn. 24, 424 S.W.2d 186, 189 (1968). A facially invalid or void judgment is one that a court has no authority to enter. *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn.1998). A voidable judgment, on the other hand, appears valid on its face and always requires proof (typically of an alleged constitutional violation) to establish its invalidity. *Id.*

In making the determination as to whether a judgment is void, this Court has observed that the writ of habeas corpus may be sustained "only when it appears upon the face of the judgment or the record of the proceedings ... that a court lacked jurisdiction or authority to sentence a defendant or that the sentence has expired." *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn.2000); *accord Ussery*, 432 S.W.2d at 658; *State v. Galloway*, 45 Tenn. (5 Cold.) 326, 336–37 (1868). Yet, this Court has consistently added that "an illegal sentence qualifies as void and may be set aside at any time through habeas corpus." *May*, 245 S.W.3d at 346; *see also Summers*, 212 S.W.3d at 256. For years, our Court has defined an illegal sentence as one that directly contravenes a statute. *Summers*, 212 S.W.3d at 256; *see also State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn.1978). Indeed, we have provided specific instructions that the petition for habeas corpus, rather than a motion to correct an illegal sentence, is the proper procedure for challenging a sentence which is not authorized by statute. *Moody v. State*, 160 S.W.3d 512, 514 (Tenn.2005).

## II.

The majority has properly determined that habeas corpus relief is warranted only when the judgment is void. Our prior opinions, however, have identified two grounds upon which a judgment may so qualify: (1) the trial court lacked jurisdiction or authority to sentence a defendant; or (2) the trial court imposed a sentence in direct contravention of a statute. In my view, the majority opinion merges these previously distinct concepts by suggesting that a judgment is void, and that habeas corpus relief is warranted, *only* upon showing that the trial court lacked jurisdiction. The analysis by the majority does not address whether the record here has established that the *trial court* has imposed an "illegal" and, thereby, void sentence in "direct contravention of a statute."

In *Burkhart*, the pivotal case on the subject of illegal sentences, the defendant escaped from prison while serving a term for burglary. 566 S.W.2d at 872. He pled guilty to escape and received a concurrent sentence even though the statute required consecutive terms. *Id.* When the Department of Correction notified Burkhart that his sentence was to be served consecutively, he filed a petition asking for relief. *Id.* This Court held that the concurrent sentence was imposed "in direct contravention of the express [statutory] provisions ... and consequently was a nullity." *Id.* at 873. Citing precedent in a number of other jurisdictions, this Court ruled that a trial judge "may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final." *Id.*

More recently, in *Moody*, we emphasized that habeas corpus is the only collateral remedy for the correction of an illegal sentence. 160 S.W.3d at 514. Moody received consecutive six-and four-year sentences for spousal sexual battery and aggravated assault. He was sentenced to an enhanced supervised probation program, and the judgment forms required him to register as a convicted sexual offender. He did not seek appeal of the revocation order, nor did he file a petition for post-

conviction or habeas corpus relief. When the trial court later revoked his probation, he filed a "Motion to Correct Errors in Judgment," challenging the legality of sentences on the basis that he was convicted of offenses that did not require the statutorily-mandated registration. The motion was denied, and Moody filed a petition for writ of certiorari. *Id.* Because the Tennessee Rules of Appellate Procedure do not authorize a direct appeal from the denial of a motion to correct an illegal sentence, we held that "the proper procedure for challenging an illegal sentence at the trial level is through a petition for writ of habeas corpus." *Id.* at 516.

Having clarified that any challenge to an illegal sentence must be by a petition for habeas corpus, we later developed procedures through which a petitioner might be permitted to establish the illegality of a sentence where a jurisdictional defect is not apparent from the judgment. *Summers*, 212 S.W.3d at 261. "In the case of an illegal sentence claim based on facts not apparent from the face of the judgment, an adequate record for summary review must include pertinent documents to support those factual assertions." *Id.* Further, "[w]hen such documents from the record of the underlying proceedings are not attached to the habeas corpus petition, a trial court may properly choose to dismiss the petition without the appointment of counsel and without a hearing." *Id.* Applying these principles in *Summers*, we arrived at the following conclusions:

> Although the judgment on Summers' escape conviction states that the sentence is to be served concurrently with his sentences for voluntary manslaughter, aggravated arson, and sale of cocaine, the judgment is silent as to whether Summers committed the escape while being held for the other charges. We conclude, therefore, that no illegality of the sentence is evident on the face of

the judgment ordering a concurrent sentence for the escape conviction. *Furthermore, nothing in the record indicates that Summers committed the escape while being held for the other charges ... Because the escape judgment is facially valid and Summers failed to support his factual assertions with pertinent documents from the record of the underlying proceedings, we conclude that summary dismissal was proper.*

*Id.* at 262 (emphasis added).

Rather than mandating either summary dismissal or an evidentiary hearing where an illegal sentence is not apparent from the face of the judgment, *Summers* teaches that the relevant inquiry includes analysis of any "pertinent documents" from the record of the underlying proceedings that are attached to the petition in support of the assertions. Thus, the procedure developed in *Summers*, which directs a petitioner to attach those "pertinent documents," necessarily recognizes a challenge to a possible jurisdictional defect in a sentence that is "not apparent from the face of the judgment." *Id.* at 261. That is, habeas corpus relief may be available where the illegality of a sentence must be established by documentation other than the judgment.

Here, the Petitioner complied with the *Moody* guidelines by filing a habeas corpus action to challenge his sentence for the burglary conviction in case number 12757; moreover, he followed the procedure approved in *Summers* by including supporting documentation. The judgment in Henry County case number 12757, indicating that the trial court sentenced him as a Range III, persistent offender for the burglary conviction, is a part of the petition. Further, the Petitioner attached documentation demonstrating: (1) that he had four

prior felony convictions for offenses occurring before the burglary in case number 12757; (2) that he had an evading arrest conviction in case number 12756, which was referenced along with four other felony convictions on the State's notice of sentencing status in case number 12757; and (3) that the evading arrest conviction occurred well after the burglary offense in case number 12757.

Habeas corpus petitions by state prisoners are numerous and rarely have merit. In my view, however, this is one of those rare occasions. The Petitioner has established that the trial court directly contravened a statute by imposing a sentence that the statute did not authorize. Under our law, the evading arrest conviction simply did not qualify as a prior offense and could not be used in the determination of whether he qualified as a persistent offender. *See* Tenn.Code Ann. § 40–35–107(b) (2006). In *State v. Blouvett*, 904 S.W.2d 111, 113 (Tenn.1995), this Court stated that a prior conviction is one "that has been adjudicated prior to the commission of the . . . offense for which sentence is to be imposed," and, here, it was not. Section 107 authorizes a trial court to impose Range III, persistent offender sentencing only for defendants with five or more prior convictions. Tenn.Code Ann. § 40–35–107(a), (c). No statute authorizes the imposition of such a sentence based upon only four prior convictions, and/or otherwise grants a trial court the discretion to do so. *See, e.g.,* Tenn.Code Ann. § 40–35–210(c) (2006) (trial court's application of enhancing and mitigating factors).

Unlike the majority, I see no principled distinction between this case and our decision in *Burkhart.* In *Burkhart,* the trial court had no authority to impose concurrent sentencing, and it directly contravened a statute by doing so. In this case, the trial court had no authority to impose a Range III, persistent offender sentence, and it directly contravened a statute by doing so. Indeed, as the Court of Criminal Appeals observed: "This court sees no difference between the petitioner's allegation regarding improper range enhancement and the improper concurrent sentences. . . . Both, if proven true, result in an illegal sentence which warrant the granting of habeas corpus relief." *Edwards v. State,* No. M2006–01043–CCA–R3–HC, 2007 WL 92359, at \*2 (Tenn.Crim. App. Jan. 11, 2007), *reh'g denied* (Feb. 15, 2007). In short, because a judgment is "illegal and void" when the trial court directly contravenes a statute by imposing a sentence beyond the legislative authority, the Petitioner, in my view, has established grounds for habeas corpus relief.

## III.

The majority treats this case, in which the *trial court* imposed the Petitioner's sentence in direct contradiction of a sentencing statute after a jury verdict, as identical to those in which the judgment has been entered through a guilty plea and negotiated sentence. Here, of course, the Petitioner neither bargained for nor agreed to a sentence higher than the permissible range, as in *State v. Mahler,* 735 S.W.2d 226 (Tenn.1987) and *Hoover v. State,* 215 S.W.3d 776 (Tenn.2007). The trial court, based upon a miscalculation of the prior offense, unilaterally imposed a sentence under the Range III, persistent offender category rather than the Range II, multiple offender classification. *See* Tenn.Code Ann. § 40–35–106 & 107. The consequence was a sentence beyond legislative authority.

I concede that the Court has used the term "non-jurisdictional" to describe our statutory sentencing classifications when trying to reconcile sentencing classification errors in the context of a plea-negotiated

sentence. *See, e.g., Hoover,* 215 S.W.3d at 781. In *Mahler,* however, former Chief Justice Harbison spoke for a unanimous Court:

> It is generally true ... that a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even if it has become final. In [*Burkhart*], the trial judge had ordered a sentence for escape to be served concurrently with a previous sentence in direct contravention of a statute requiring the sentence to be consecutive.
>
> There have been other cases where sentences were imposed which were higher or lower than that authorized by the statute designating the punishment for the crime. In those cases the sentences have been held subject to being later vacated or corrected.
>
> As previously stated, that is not the situation here. The sentence imposed was clearly within statutory limits fixed for the offense of murder in the second degree. In our opinion any question as to the classification of appellant as a Range II offender or as to his release eligibility was waived by the guilty plea.

*Mahler,* 735 S.W.2d at 228 (citations omitted). Whatever the meaning or consequence of the term "non-jurisdictional" in *Hoover* may be, we are not presented with a plea-negotiated sentence in the present case.

Although I understand the proposition that a guilty plea cannot salvage an illegal sentence, I am not persuaded that this maxim reconciles our existing case law.[1] In my view, the term "non-jurisdictional" is neither helpful nor clear when applied to the present case because it fails to consider the trial court's actions and fails to apply our traditional definition of an "illegal and void" sentence. Indeed, as the Court of Criminal Appeals reasoned in its order denying the State's petition for a rehearing:

> The state cites *McConnell* for the proposition that offender classification and release eligibility are non-jurisdictional. However, the state misconstrues the holding of *McConnell* in which the supreme court actually commented that the use of offender classification and release eligibility *as subjects of plea bargaining* are non-jurisdictional. In other words, release eligibility offender classification can be the subject of plea negotiations and agreed to by a defendant provided that the sentence imposed is within the statutory authority of the sentencing act. Unlike the situation described in *McConnell,* the challenged judgment in this case resulted from a sentence imposed by the trial court after a jury conviction.

*Edwards,* 2007 WL 92359, at *2. Just as the concurrent sentencing for the escape in *Burkhart* was in direct contravention of a statute, Range III persistent offender sentencing here also was in direct contravention of a statute. I am unwilling to reject habeas corpus relief where the record establishes that the *trial court* had no authority to impose a sentence under Tennessee Code Annotated section 40–35–107.

---

1. In *McConnell v. State,* the petitioner was granted relief from a sentence based upon the 1982 Criminal Sentencing Reform Act rather than the 1989 Act, even though he had entered into a plea agreement; the Court explained that relief was warranted because the plea agreement was structured pursuant to a wholly inapplicable statute, not because the agreed sentence exceeded that available for the offender classifications. 12 S.W.3d 795, 799 (Tenn.2000). Similarly, in *Stephenson,* the petitioner was granted relief where he entered a plea of first degree murder and was sentenced to life without the possibility of parole before the enactment of the statute authorizing that sentence. 28 S.W.3d at 911.

When there is a wrong, our criminal justice system is designed so as to provide a procedural remedy, *May*, 245 S.W.3d at 348, and the writ of habeas corpus, in my own assessment, is the only cure in these circumstances.

## IV.

In conclusion, I fear that the majority opinion may be read to further restrict what is already a narrow, and yet historically vital, remedy. I would hold that the Petitioner's sentence for burglary as a Range III, persistent offender was illegal because the trial court lacked authority to proceed under Tennessee Code Annotated section 40–35–107. Because the record of the proceedings demonstrates that the Petitioner did not have the requisite number of convictions to be classified as a Range III, persistent offender, I would grant habeas corpus relief without an evidentiary hearing and remand this cause to the court of conviction for the imposition of a Range II sentence.

I am authorized to state that Justice Holder joins in this dissenting opinion.